# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| **RONNIE FOOTE** )<br>3720 Lumar Drive )<br>Fort Washington, MD 20774 )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>**CHRIS WRIGHT** )<br>**SECRETARY OF ENERGY** )<br>**US DEPARTMENT OF ENERGY** )<br>1000 INDEPENDENCE AVENUE, SW )<br>WASHINGTON, DC 20585 )<br> )<br> <u>**SERVE:**</u> )<br> **EDWARD ROBERT MARTIN JR.** )<br> **US ATTORNEY DISTRICT OF COLUMBIA** )<br> 601 D STREET, NW )<br> WASHINGTON DC 20001 )<br> )<br>**KELLY O. HAYES** )<br>**US ATTORNEY FOR THE DISTRICT OF** )<br>**MARYLAND** )<br>**36S. CHARLES STREET 4TH FL.** )<br>BALTIMORE MD 21201 )<br> )<br> **PAM BONDI** )<br> **ATTORNEY GENERAL** )<br> U.S. DEPARTMENT OF JUSTICE )<br> 950 PENNSYLVANIA AVENUE, NW )<br> WASHINGTON DC 20530-0001 )<br> )<br>**SAMUEL T. WALSH/** )<br>**JONATHAN BRIGHTBILL** )<br> **US DEPARTMENT OF ENERGY** )<br>  1000 INDEPENDENCE AVENUE, SW )<br>  WASHINGTON, DC 20585 )<br> )<br>    Defendant. )<br> ) | Civil Action No. _____ |

Case 8:25-cv-01358-DLB   Document 1   Filed 04/29/25   Page 2 of 13

**COMPLAINT**

Plaintiff Ronnie Foote, by and through counsel, C. Sukari Hardnett, and the Law Office of C. Sukari Hardnett, brings this civil action against Defendant, Chris Wright, SECRETARY OF ENERGY, on the grounds and in the amounts set forth herein:

**PARTIES**

Plaintiff Ronnie Foote, a resident of the State of Maryland, who brings this civil action, against Defendant Chris Wright, SECRETARY OF ENERGY, which is located in the District of Columbia on the grounds and in the amounts set forth herein:

**JURISDICTION AND VENUE**

Plaintiff was an employee of the United States Department of Energy. He brings this action against the Defendant for unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.,* age, retaliation, reprisal, hostile work environment), Section 504 of the Rehabilitation Ace of 1973, which requires Federal agencies by law to provide reasonable accommodations for individuals with disability. Federal Question Jurisdiction, which allows federal courts to decide cases involving issues of federal law - this authority comes from 28 U.S.C. 1331, Also, Plaintiff brings this suit in federal court on diversity jurisdiction grounds, 28 U.S.C. § 1332 requires that the amount in controversy exceed $75,000 and the action be between "citizens of different states." Plaintiff seeks an award of compensatory and punitive damages and all attorney fees and costs incurred in connection with the filing of this civil action.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after

2

receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit A. and B *See* 42 U.S.C. §2000e-5(f)(1).

## PRELIMINARY STATEMENT

Plaintiff, Ronnie Foote is a veteran, who joined the military at the age nineteen (19) and honorably retired as a "Tech Sergeant E-6," after twenty years (20) of service. Upon completing his military service, Plaintiff began working at the Department of Energy (DOE) as an Emergency Management Specialist NQ-0089-02. He assisted (NA-40) management in promoting operational readiness of, and maintain operational awareness for the DOE and the National Nuclear Security Administration (NNSA) emergency management and response activities as a Deputy Watch Officer.

## FACTUAL ALLEGATIONSH

1. Plaintiff Ronnie Foote is an individual with a disability, Coronary Artery Disease.

2. During all times relevant to this action, Plaintiff was employed as an Emergency Operations Specialist and Watch Officer and capable of preforming the essential duties of his job with or without an accommodation. Plaintiff provided adequate documentation from his doctors to support his request for reasonable accommodations.

3. During the time of his employment, Plaintiff was discriminated on the basis of disability. He suffered retaliation, reprisal, harassment, a hostile work environment and denied reasonable accommodations.

4. In October 2022, Plaintiff notified his first line supervisor at DOE, by phone, that he was in the hospital and required surgery.

5. On October 27, 2022, Plaintiff, had open heart surgery at Med Star Washington Hospital Center. On November 14, 2022 Dr. Bafi, heart surgent ,submitted a letter to Plaintiff to present to Defendant concern Plaintiff his return to duty on JANUARY 3, 2023 WITH NO RESTRICTIONS.

6. On January 5, 2022, Plaintiff's physician primary care doctor, provided Plaintiff with a letter to Defendant explaining that Plaintiff had heart surgery and would be able to return to work on January 3, 2023. Explaining that "please do not hesitate to call me if you need additional information."

7. In turn, Defendant informed Plaintiff by memorandum dated November 19 and again on November 23, 2022, that he would have to provide additional information " about the issues that would affect his ability to perform his work responsibilities, a prognosis including future treatment, when and if the condition would stabilize, and an explanation of limitations on Plaintiff's ability to perform the essential functions his duties."

8. In the same memo, Defendant advised Plaintiff that if he was seeking accommodations, he would have to submit a four (4) page form from his physician explaining the nature of the disability, the limitations caused by the disability and how the accommodation would assist Plaintiff in performing his duties.

9. The position description was nine (9) pages for Plaintiff's doctor to review and analyze to determine Plaintiff's ability to perform his job responsibilities. Plaintiff was still out on sick leave.

4

10. On December 19, 2022, Defendant Polk sent Plaintiff another letter informing him that he had not provided the medical information that he requested in the November 23,2022 letter and Plaintiff had until January 3, 2024 to produce it; if not Failure to provide would result in enforced leave

11. Plaintiff was scheduled to returned to work on January 3, 2024.

12. On January 4, 2023, Plaintiff was instructed that he would be placed on night shifts. Plaintiff had just returned from open heart surgery and requested to remain on day shifts until he could consult with his doctors about the safety of working 12-hour night shifts.

13. When Plaintiff returned to work Plaintiff was not on the scheduled to work that entire year for 2023. Although, Defendant Polk told him that he was scheduled to work.

14. On January, 5, 2024, Plaintiff produced a note from his doctor stating that he could return to work with no restrictions but that he (the doctor) did not want Plaintiff to work night shifts and that he would make another determination after Plaintiff's appointment with his primary care doctor on January 25, 2023, about the safety of Plaintiff working night shifts.

15. However, Plaintiff's doctor's appointment was changed and it was rescheduled for February 2023.

16. On January 6. 2023, Plaintiff was placed on Weather and Safety Leave by Defendant without explanation.

17. Defendant Polk approved the WSL for Plaintiff. However, Plaintiff should have been placed on sick or annual leave according to DOE leave policy.

18. Plaintiff believes that Defendant Polk was aware that SWL was not the correct leave placement.

5

19. When weather and safety related conditions prevent employees from travel to work safely, WSL is customarily granted by supervisors.

20. On February 2, 2023, Plaintiff took a combination of sick and annual leave until April 20, 2023.

21. On April 9 2023, Easter Sunday, Defendant Polk called and emailed Plaintiff to inform him that because he did not submit adequate additional medical documentation, Plaintiff former approved leave request was rescinded and he would be coded AWOL.

22. Plaintiff was coded AWOL for 113 hours from February 1 through February 17, 2023.

23. Previously, on February 15, 2023, before Plaintiff's leave was scheduled to end, Plaintiff called Defendant Polk to request leave, because he had a doctor's appointment scheduled on the day.

24. On April 9. 2023 Defendant requested that Plaintiff go to his doctor to request additional medial leave.

25. On April, 17, 2023, Plaintiff provided Defendant with additional medical leave.

26. Plaintiff was told that if he did not report to work that he would be coded AWOL. Feeling very stressed Plaintiff requested a combination of sick and annual leave until he completed his physical rehabilitation and reported to work on April 20, 2023.

27. On April 9, 2023, Defendant Polk continued to demand additional medical information from Plaintiff.

28. On April 17, 2023, Plaintiff provided additional medical documentation to the Defendant Polk and Defendant Polk, alone, decided that the medical documentation submitted February 13,14,15,17 and 21, 2023 on was not sufficient.

29. From December 2022 through December 2023, Plaintiff was consistently denied reasonable accommadations and informed that he did not submit sufficient medical documentation that would qualify as disable.

30. Defendant Polk, alone, decided to deny Plaintiff's request for accommodation. This decision was made in contradiction to DOE's disability policy as stated in Policy Memorandum #100 B.:

> 4) a. Before the DMO can officially deny an accommodation request, the LRAC must submit the draft denial to OGC for concurrence. In fact, the OGC office should have been consulted through the entire RA process and in some cases it is mandatory. (See general requirements under section A # 7).

31. On April 25, 2023, Defendant Polk instructed Plaintiff to log onto ATAAPS and check the concur box for a time sheet that he did not concur with.

32. Plaintiff did not concur with the time sheet because the time sheet gave him credit for overtime hours that he did not work because he was on leave.

33. Defendant Polk became very upset with Plaintiff when he would not check the concur box on a time sheet that someone submitted. Plaintiff knew that concurring would have been FRADULENT.

34. Defendant Polk cursed Plaintiff and hung up the phone.

35. On July 28,2023, Plaintiff was placed on a 14-day unpaid suspension for effective August 3, 2023.

36. Defendant alleged that Plaintiff did not take an opportunity to rebut or refute the 14 day unpaid suspension.

37. Defendants claim that they were not aware of Plaintiff's disability, even after he informed them that he was in the Emergency Room with hypertension and stress from work.

38. Defendants allege that they were not aware of Plaintiff's EEOC activity when Plaintiff filed a charge of retaliation against Defendant Polk. Human Resources and Defendant Polk's supervisors were aware of the complaint because upon information and belief that were interview as a result of the charge of relation by an EEO investigator.

39. Plaintiff's job description was altered to add a provision that only applied to Plaintiff and which ultimately persuaded Plaintiff not to formally apply for FMLA.

40. Defendant deducted money from Plaintiff's without notifying him in advance.

41. On April 13, 2022, Defendant Polk placed Plaintiff on leave restriction.

42. Defendant, lied and accused Plaintiff of not coming to work, being unprofessional, and not fulfilling his job responsibilities.

43. On January 29, 2023, Plaintiff was offered a temporary promotion to the position of Emergency management specialist, with an 8% increase in salary.

44. Plaintiff was commended for his willingness to temporary out the additional responsibilities required to fulfill the position.

45. The offer further stated "The dedication and quality of service you continue to provide is a great value added to this organization."

46. In fiscal years 2020, 2021, and 2022, Plaintiff was rated "Fully Meets Expectations."

47. Plaintiff is a qualified individual with a disability, was engaged in prior EEO activity and is over the age of 40.

48. Plaintiff was constructively discharged and forced into retirement.

## COUNT I
## DISABILITY BASED DISCRIMINATION
### Violation of the Rehabilitation Act of 1973

49. Paragraphs one (1) through ten (48) are incorporated by reference as if fully set forth herein.

### The Rehabilitation Act of 1973

The Rehabilitation Act is a law that prohibits the Federal Government as an employer from discriminating against qualified individuals with disabilities. It replaced the vocational rehabilitation act and extended and revised the authorization of grants to states for vocational rehabilitation services, with special emphasis on services to those with the most severe handicaps. There is a reasonable basis for imputing liability upon the Defendant, as Defendant knew and should have known about the Agency's responsibility to provide reasonable accommadations to Plaintiff and failed to take immediate and appropriate corrective action.

50. Defendant refused to accept Plaintiff's medical documentation on four separate occasions.

51. Defendant placed Plaintiff on restrictive leave.

52. Defendant denied Plaintiff's leave request from November 2022 through December 2023.

53. Plaintiff acted with reasonable care to take advantage of the employer's policy and procedures to apply for reasonable accommadations and to otherwise prevent the harm that could have been avoided.

54. As a result of the refusal to accommodate Plaintiff's discrimination and harassment that led to a hostile work environment, Plaintiff suffered emotional pain, inconvenience, mental anguish and other damages.

WHEREFORE, Plaintiff seeks judgment against the Defendant for compensatory damages in the amount of Three Hundred Thousand Dollars ($300.000), punitive damages in an amount of Three Hundred Thousand Dollars ($300.000), , plus interest, costs, attorney's fees and all such just and further relief as the court deems just and proper.

## COUNT II
## RETALIATION/ REPRISAL

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e),** *et seq.*

Paragraphs five (1) through twenty-three (49) are incorporated by reference as if fully set forth herein.

Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:

> An employer may not fire, demote, harass or otherwise "retaliate" against an individual for filing a charge of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination. The same laws that prohibit discrimination based on race, color, sex, religion, national origin, age, and disability, as well as wage differences between men and women performing substantially equal work, also prohibit retaliation against individuals who oppose unlawful discrimination or participate in an employment discrimination proceeding.

In addition to the protections against retaliation that are included in all of the laws enforced by EEOC, the Americans with Disabilities Act (ADA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA. *See EEOC's Compliance Manual Section 8, Chapter II, Part D.*

54. Defendant Retaliated against Plaintiff when refused to accommodate his disability on from January 3, 2023 to the time when plaintiff was constructively discharged

55.     Additionally, Plaintiff was subjected to other negative and unreasonable actions by the Defendant when Plaintiff informed his supervisor that he needed reasonable accommadations and he was charged AWOL. The actions of the Defendant were humiliating, demeaning and unnecessary.

56.     Plaintiff was subjected to false statements made about him by Defendant to demean and humiliate him. Plaintiff after 20 years of exceptional and faithful service to the Defendant and 20 years of service to this nation Plaintiff was constructive discharged.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual and compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00), plus interest, costs, and all such just and further relief as the court deems just and proper.

## Damages

As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

    a.    Plaintiff has suffered loss of income from being forced to retire four years early.

    b.    Plaintiff has suffered loss of pension or retirement benefits.

    c.    Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of Plaintiff in his previous position is impractical and unworkable. Therefore, plaintiff seeks an award of future lost wages and benefits to compensate him up to the mandatory retirement age of sixty-five (65).

    d.    Plaintiff is entitled to prejudgment interest on lost wages and benefits and post judgment interest on all sums, including attorney fees.

    e.    Defendant's conduct was an intentional and willful violation of the Title VII, the ADEA and the ADA. Plaintiff is entitled to an award of liquidated damages within the meaning of the ADEA and the FLSA. *See 29 U.S.C. §626(b).*

## Attorney Fees

Plaintiff is entitled to an award of attorney fees and costs under the Title VII, the ADEA and the ADA.

## Prayer

For these reasons, Plaintiff asks for judgment against Defendant for all other relief that the Plaintiff is entitled in addition to all relief the Court deems appropriate, just and fair.

## JURY DEMAND

Plaintiff Requests a Trial by Jury on all Issues.

Respectfully submitted,
Ronnie Foote

By: _____/S/_____
Counsel, C. Sukari Hardnett

C. Sukari Hardnett, Esquire
MD14840
Law Office of C. Sukari Hardnett
P.O. Box 7097
Silver Spring, MD 20910
Tel: (301) 587-7001

## JURY DEMAND

The Plaintiff Requests a Trial by Jury on all Issues.

Respectfully submitted,

By: _____

**RONNIE FOOTE**                     **Roonie Foote/ Pro SE**
3720 Lumar Drive
Fort Washington, MD 20774

13